# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

SPECIAL COUNSEL
EX REL. JEFFREY  MISSAL,
Petitioner,

v.

DEPARTMENT OF THE INTERIOR,
Agency.

DOCKET NUMBER
CB-1208-17-0025-U-1

DATE: August 2, 2017

## THIS STAY ORDER IS NONPRECEDENTIAL[1]

Lisa Powell, Esquire, Oakland, California, for the petitioner.

Thomas Devine, Esquire, Washington, D.C., for the relator.

Daniel T. Raposa, Washington, D.C., for the agency.

### BEFORE

Mark A. Robbins, Vice Chairman

### ORDER ON STAY REQUEST

Pursuant to 5 U.S.C. § 1214(b)(1)(A), the Office of Special Counsel (OSC) requests that the Board stay Mr. Missal's removal for 45 days while OSC completes its investigation and legal review of the matter and determines whether

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

to seek corrective action.  For the reasons discussed below, OSC's request is GRANTED.[2]

## BACKGROUND

¶2 In its July 28, 2017 stay request, OSC alleges that it has reasonable grounds to believe that on January 14, 2016, the Department of the Interior (the agency) removed Mr. Missal from his position as a Regional Environmental Officer/Environmental Protection Specialist with the agency's Bureau of Safety and Environmental Enforcement (BSEE) in Anchorage, Alaska, as a result of a prohibited personnel practice.  OSC alleges that, beginning in September 2014, Mr. Missal made protected disclosures through his chain of command and to individuals in the Solicitor's Office, among others, and in October 2014, he made a protected disclosure to the agency's Inspector General (IG).  These disclosures related to Mr. Missal's belief that the agency was violating the environmental review process set forth in the National Environmental Protection Act (NEPA) regarding its decision in Lease Sale 193 to lease areas of the outer continental shelf for oil production.  OSC contends that Mr. Missal reasonably believed that the agency was violating NEPA by predetermining and acting in a manner that suggested that the agency would affirm Lease Sale 193 regardless of the findings of a required Environmental Impact Statement (EIS), in which the agency was mandated to rigorously explore and objectively evaluate the environmental impact

---

[2] On August 1, 2017, the agency filed a response to OSC's initial stay request.  The Board's regulations do not contemplate an agency response to an OSC initial stay request in original jurisdiction cases.  *See* 5 C.F.R. §§ 1201.134-.136.  However, in its response, the agency disputes that the relevant management officials had knowledge of Mr. Missal's protected disclosures or activity and sets forth its reasons for removing Mr. Missal.  A stay proceeding is not a substitute for a hearing on the merits, and the stay itself is not a final decision on the merits of the evidence.  *See Special Counsel ex rel. Shaw v. Social Security Administration*, 76 M.S.P.R. 392, 395 (1997); *see also Special Counsel v. Department of Transportation*, 71 M.S.P.R. 87, 90 (1996).  Therefore, at this stage, we do not resolve these disputed issues.

of its proposed action as well as all reasonable alternatives, including taking no action.

¶3     OSC contends that on December 3, 2014, the IG interviewed Mr. Missal, and he provided names of multiple witnesses. Shortly thereafter, on December 9, 2014, the Chief of the Office of Policy and Analysis discovered that the IG was investigating Lease Sale 193 after his subordinate, who had been identified as a witness by Mr. Missal, was contacted by the IG for an interview. OSC contends that, within 3 hours of learning of the IG investigation, the Chief initiated an internal investigation of Mr. Missal for unspecified misconduct related to a telephone call the Chief had received from Mr. Missal 5 months prior. Following an internal investigation, Mr. Missal was removed from his position on January 14, 2016, based on charges of accessing websites related to his private business during Government time, failing to report his outside business, and misrepresenting the circumstances surrounding his departure from a prior job.

¶4     OSC maintains that Mr. Missal's protected disclosures were a contributing factor in the decision to remove him because the investigation into Mr. Missal was a pretext for gathering evidence to retaliate against him for his protected disclosures. OSC further maintains that the relevant management officials had actual or constructive knowledge of Mr. Missal's disclosures and his investigation and removal occurred within a timeframe that supports an inference of contributing factor.

## ANALYSIS

¶5     Under 5 U.S.C. § 1214(b)(1)(A)(i), OSC may request that any member of the Merit Systems Protection Board order a stay of any personnel action for 45 days if OSC determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice. Such a request shall be granted unless the Board member determines that, under the facts and circumstances involved, such a stay would not be

appropriate. 5 U.S.C. § 1214(b)(1)(A)(ii). OSC's stay request need only fall within the range of rationality to be granted, and the facts must be reviewed in the light most favorable to a finding of reasonable grounds to believe that a prohibited personnel practice was (or will be) committed. *See Special Counsel ex rel. Aran v. Department of Homeland Security*, 115 M.S.P.R. 6, ¶ 9 (2010).

¶6        To establish a prima facie case of whistleblower retaliation, OSC must show that the employee made a protected disclosure or engaged in protected activity that was a contributing factor in the challenged personnel action. *See id.*, ¶ 7; *see also Hooker v. Department of Veterans Affairs*, 120 M.S.P.R. 629, ¶ 9 (2014). A disclosure is protected under 5 U.S.C. § 2302(b)(8) if the individual has a reasonable belief that the information being disclosed evidences a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014). The standard for evaluating the reasonableness of the belief is whether a disinterested observer with knowledge of the essential facts known to and readily ascertainable to the employee could reasonably conclude that the actions of the Government evidence one of these types of wrongdoing. *Id.*

¶7        Viewing the allegations in the light most favorable to OSC, it appears that Mr. Missal reasonably believed that he was disclosing violations of NEPA. OSC indicates that Mr. Missal's disclosures expressed concerns that the agency had made an improper predetermination that Lease Sale 193 would be affirmed and was taking actions that were not proper prior to the completion of the EIS. For example, OSC states that Mr. Missal disclosed that it was improper to accept and review an exploration plan and to speak with the applicant about applications for permits to drill prior to the EIS being completed. He also disclosed that the applicant was committing large amounts of resources in signing contracts for drilling rigs, vessels, and facilities in anticipation of the lease sale being affirmed, and expressed concern that guidance from the Council on

Environmental Quality indicated that allowing an applicant to prematurely commit money or other resources may limit the choice of reasonable alternatives contrary to NEPA.

¶8      OSC contends that an IG report concerning Mr. Missal's disclosures issued in December 2015 revealed that many analysts working on the EIS similarly believed that the agency had made the decision to affirm Lease Sale 193 regardless of the findings of the EIS.  OSC further contends that the IG report also revealed that there was an unusually expedited timeline for the EIS for the stated purpose of protecting the agency from blame if the leaseholder missed the 2015 drilling season.  In the IG report, individuals expressed their beliefs that it typically took 2 to 3 years to create an EIS, the 7-month timeline here was unreasonable, and the quality of the EIS was compromised due to the aggressive timeline.  These facts suggest that a disinterested person could reasonably conclude that the agency had decided that it would affirm the lease sale prior to the EIS.  OSC contends that this is improper based on regulations, which indicate that an EIS should be used as part of the decision-making process and not to rationalize or justify decisions already made.  Thus, based on OSC's assertions, it appears that Mr. Missal had a reasonable belief that he was disclosing violations of NEPA.

¶9      The contributing factor element may be established through the knowledge/timing test, i.e., that the official taking the personnel action knew of the protected disclosure or activity and the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor.  *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 18 (2015); *Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 7 (2014); *see* 5 U.S.C. § 1221(e)(1).  According to OSC, it is reasonable to infer that the responsible management officials had knowledge of Mr. Missal's disclosures because Mr. Missal had repeatedly raised his concerns with many

agency employees and on weekly phone calls such that it was widely known among BSEE management officials.

¶10    Regarding the Chief of the Office of Policy and Analysis, who referred Mr. Missal for the internal investigation, OSC contends that it is reasonable to infer that he had actual or constructive knowledge because Mr. Missal had made disclosures to the Chief's subordinate as well as the Chief's supervisor and because the Chief interacted regularly with BSEE management officials at headquarters who were aware of Mr. Missal's disclosures, including Mr. Missal's supervisor.  OSC contends that the internal investigator and the proposing official also were aware of Mr. Missal's disclosures because they received a forwarded email containing some of Mr. Missal's disclosures.  Finally, OSC contends that the deciding official was aware of Mr. Missal's disclosures because Mr. Missal detailed them at length during his response to the proposal and because the IG report, which was issued a month prior to Mr. Missal's removal, referenced that a complaint had been received from a BSEE Regional Environmental Officer in Alaska.  OSC contends that Mr. Missal was the senior of only two BSEE employees in Anchorage, Alaska.

¶11    OSC further indicates that the investigation that led to Mr. Missal's removal began 2 months after his IG complaint and hours after it came to light that the IG was investigating Lease Sale 193, and he was removed a little over a year after he began making disclosures.  Such assertions, if proven, would satisfy the timing component of the knowledge/timing test.  *See Mastrullo*, 123 M.S.P.R. 110, ¶ 21 (recognizing that a personnel action taken within approximately 1 to 2 years of an appellant's protected disclosures satisfies the knowledge/timing test). Although OSC seeks a stay of Mr. Missal's removal, the Board will consider evidence of the conduct of an agency investigation when it is so closely related to a personnel action that it could have been pretext for gathering evidence to use to retaliate against an employee for whistleblowing.  *See, e.g.*, *Johnson v. Department of Justice*, 104 M.S.P.R. 624, ¶ 7 (2007).

¶12  Given the deference that generally should be afforded to OSC in the context of an initial stay request, and the assertions made in its stay request, there are reasonable grounds here to believe that the agency removed Mr. Missal based on his protected disclosures in violation of 5 U.S.C. § 2302(b)(8) and/or for cooperating with or disclosing information to the IG in violation of 5 U.S.C. § 2302(b)(9)(C).  Although the effective date of Mr. Missal's removal already has passed, the Board has authority to stay an action after its effective date.  *See* 5 U.S.C. § 1214(b)(1)(A)(i); *Special Counsel v. Department of Transportation*, 70 M.S.P.R. 520, 522 (1996).  However, the lapse in time since the effective date of a personnel action is a factor to be considered in determining whether to grant a stay.  *See Special Counsel v. Department of Transportation*, 59 M.S.P.R. 552, 555 (1993).  Here, OSC did not request a stay of Mr. Missal's removal until a year and a half after it was effective.  Nonetheless, OSC explains that its investigation is complete, and on March 7, 2017, it sought corrective action from the agency, but the agency informed OSC that it disagreed that corrective action was warranted.  Subsequently, OSC provided the agency additional analysis of the case, and the parties engaged in settlement discussions in May 2017.

¶13  OSC now seeks a stay order to provide Mr. Missal temporary status quo relief and forestall his economic hardship while it pursues corrective action by settlement or, if needed, prepares a prohibited personnel practices report.  Because OSC has completed its investigation and is attempting to resolve this matter, it is appropriate to grant the stay.  *See Special Counsel ex rel. Feilke v. Department of Defense Dependent Schools*, 76 M.S.P.R. 621, 624-25 (1997) (granting an initial stay over 3 years after the effective date of the termination action when OSC had completed its investigation and initiated contact with the agency to attempt to resolve the matter); *see also Special Counsel ex rel. Andersen v. Department of Justice*, 78 M.S.P.R. 675, ¶ 4 (1998) (stating that the purpose of a stay is to maintain the status quo ante and minimize the

consequences of an alleged prohibited personnel practice while OSC and the agency involved resolve the disputed matter).

## ORDER

¶14      Based on the foregoing, granting OSC's stay request would be appropriate. Accordingly, a 45-day stay of Mr. Missal's removal is GRANTED. The stay shall be in effect from August 2, 2017, through and including September 15, 2017. It is further ORDERED that:

(1)    During the pendency of this stay, Mr. Missal shall be reinstated to the position that he held prior to his removal;

(2)    The agency shall not effect any changes in Mr. Missal's duties or responsibilities that are inconsistent with his salary or grade level, or impose upon him any requirement which is not required of other employees of comparable position, salary, or grade level;

(3)    Within 5 working days of this Order, the agency shall submit evidence to the Clerk of the Board showing that it has complied with this Order;

(4)    Any request for an extension of this stay pursuant to 5 U.S.C. § 1214(b)(1)(B), as amended by Pub. L. No. 115-42,[3] and 5 C.F.R. § 1201.136(b) must be received by the Clerk of the Board and the agency, together with any further evidentiary support, on or before August 31, 2017; and

(5)    Any comments on such a request that the agency wants the Board to consider pursuant to 5 U.S.C. § 1214(b)(1)(C) and 5 C.F.R.

---

[3] As passed by the House of Representatives on May 25, 2017, passed by the Senate on June 14, 2017, and signed into law on June 27, 2017.

§ 1201.136(b) must be received by the Clerk of the Board on or before September 7, 2017.


FOR THE BOARD:                          _____
                                        Jennifer Everling
                                        Acting Clerk of the Board

Washington, D.C.